IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMY WILLIAMS, | § | |
|     PLAINTIFF, | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | (JURY DEMANDED) |
| VEHICLE VIN NO. 1TTF48202W2001775 | § | |
| ET AL., | § | |
|     DEFENDANTS | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Jimmy Williams files this Original Complaint and Jury Demand complaining of Vehicle, Vin No. 1TTF48202W2001775, Wabash National Corporation, Wabash National, L.P., Wabash National Trailer Centers, Inc., Transcraft Corporation, John Doe Manufacturer, John Doe Distributor, John Doe Engineer, John Doe Designer, and Truck-Trailer Manufacturers Association, Inc. and in support would respectfully show the Court as follows:

## I.
## PARTIES

1.1.    Plaintiff Jimmy Williams is an individual residing in Houston, Harris County, Texas.

1.2.    Defendant Vehicle VIN No. 1TTF48202W2001775 is a commercial trailer ("the vehicle").

1.3.    Defendant Wabash National Corporation is a Delaware and/or Indiana corporation doing business in Texas. Wabash National Corporation's principal place of business is 1000 Sagamore Parkway South, Lafayett, Indiana, 47905, and it can be served through its agent for service of process, Timothy J. Monahan, 1000 Sagamore, Lafayette, Indiana, 47905 or wherever it may be found.

1.4.   Defendant Wabash National, L.P. is a Delaware limited partnership doing business in Texas and can be served through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, Texas 78701 or wherever it may be found.

1.5.   Defendant Wabash National Trailer Centers, Inc. is a Delaware corporation doing business in Texas and can be served through its agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, Texas 78701 or wherever it may be found.

1.6.   Defendant Transcraft Corporation was existing as an Indiana corporation doing business in Texas with its principal place of business in Wakarusa, Indiana.  The registered agent for Transcraft Corporation was Richard Bowen, Jr., P.O. Box 657, Wakarusa, Indiana 46573.  Upon information and belief, Transcraft Corporation is now a wholly owned subsidiary of Wabash National Corporation or an affiliate of same.  Transcraft Corporation may be served through Wabash National Corporation's agent for service of process, Timothy J. Monahan, 1000 Sagamore, Lafayette, Indiana 47905, Wabash National Trailer Centers, Inc.'s and/or Wabash National, L.P.'s agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, Texas 78701, or wherever it may be found.

1.7.   Defendant John Doe Manufacturer is a manufacturer that participated in the manufacture of the vehicle.  John Doe Manufacturer may be served with process by serving its registered agent for service of process.  John Doe Manufacturer conducts business in the State of Texas.

1.8.   Defendant John Doe Distributor is a distributor that participated in the distribution of the vehicle. John Doe Distributor may be served with process by serving its registered agent for service of process.  John Doe Distributor conducts business in the State of Texas.

1.9.   Defendant John Doe Engineer is an individual who participated in the design and engineering of the vehicle.  John Doe Engineer may be served with process by serving him/her at his/her  place of residence or place of employment.  John Doe Engineer conducts business in the State of Texas.

1.10. Defendant John Doe Designer is a designer who participated in the manufacture of the vehicle.  John Doe Designer may be served with process by serving him/her at his/her place of residence or place of employment. John Doe Designer conducts business in the State of Texas.

1.11.   Defendant Truck-Trailer Manufacturers Association, Inc. ("TTMA") is an incorporated professional association organized and existing under the laws of the State of Virginia which conducts business in the State of Texas. TTMA's principal place of business is 1020 Princess Street, Alexandria Virginia 22314.   TTMA can be served with process by serving its registered agent for service of process, CT Corporations System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060 or wherever it may be found.

## II.
## JURISDICTION AND VENUE

2.1.   This Court has jurisdiction of this matter in accordance with 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000.00.

2.2.   Venue is proper in the Southern District of Texas because the cause of action accrued in whole or in part in the Southern District of Texas.  28 U.S.C. § 1391.

## III.
## NOTICE FACTS

3.1.   This case involves the defective design, manufacture and marketing of a dangerous trailer that caused excruciating, debilitating and massive injuries to plaintiff in Texas in October, 2007.  The case also involves the conspiracy between the defendants to provide false and misleading information to market, design and manufacture the dangerous trailer involved in the collision at issue in this case.  Defendants Transcraft Corporation, Wabash National, L.P., Wabash National Trailer Centers, Inc., Wabash National Corporation, Transcraft Corporation and TTMA have conspired and/or participated in the design, manufacturing and marketing of these dangerous trailers to the detriment of Texas residents in general and the injuries and damages to Plaintiff in particular.  TTMA has aided and abetted defendants in making these dangerous trailers available on Texas highways.

3.2.   The  trailer  that  caused  life-altering  injuries  to  Jimmy  Williams  was

unreasonably dangerous because reasonably available and alternative safe designs were not used by the defendants. Plaintiff will show that the defendants have known of safer designs that were reasonably available to prevent the precise debilitating, life altering event and damages that occurred in this case. In fact, Plaintiff will show that defendants have tested and made available outside of Texas and, perhaps, the United States, the alternative safer design of trailer that would have prevented the underride damages that occurred in this case. Based on information and belief, Plaintiff will show that defendants have known that a side underride guard, costing a de minimus amount to install, would have prevented and/or severely limited the enhanced damages complained of in this litigation; but knowingly, and/or unreasonably undertook to ignore these alternative designs and falsely marketed the trailer as complying with "state of the art" and/or as reasonably suitable for the purposes to which they were utilized. Plaintiff will show that TTMA has conspired with defendants to falsely present to the marketplace in Texas and elsewhere that trailers having no side underride guard protection represent the "state of the art" design of such trailers, which in fact is false. Further, TTMA has aided and abetted defendants in their false propaganda and marketing campaign to discourage the use of side underride guard protection which is proven to be a safer and more reasonable design to prevent the types of enhanced damages and injuries complained of in this litigation.

3.3.    Because of the missing side underride guard protection, Jimmy Williams' vehicle struck the trailer causing his car to be lodged underneath the trailer. As TTMA and other defendants have known, this results in massive injuries and damages.

3.4.    Plaintiff will show that defendants' vehicle was designed, marketed, manufactured, engineered and/or made available in conformity with TTMA's

4

"recommended practices", which the latter falsely and misleadingly described as the "state of the art" for such trailers. Plaintiff will show that defendants and TTMA knew, or should have known, that such designed trailers would end up in the stream of interstate commerce, including Texas.  Plaintiff would show that TTMA gratuitously undertook to recommend "practices" for the design, engineering, manufacturing and marketing of such defective trailers and, as such, was required to do so reasonably.  Plaintiff would show that TTMA did not act reasonable and/or in a prudent manner when it proposed its "recommended practices" for the manufacture, design, engineering and/or marketing of such defective trailers.   In fact, defendants' adherence to TTMA's "recommended practices" assisted in the design of an unreasonably dangerous vehicle that was a producing, proximate and/or contributing cause of Jimmy Williams' injuries.  Plaintiff will further show that TTMA has continually assisted in the false and misleading marketing of these dangerous trailers in Texas, and elsewhere, to the detriment of Plaintiff and the general public at large.  Further, TTMA has consistently and continually engaged in deceptive and misleading conduct in Texas to prevent Texas residents from learning the truth about the dangerous condition of the trailers involved in this case.

3.5.    Defendants manufactured, marketed, engineered and provided the trailer involved in the collision that forms the basis of this lawsuit.  These defendants were fully aware of the foreseeable risks of their dangerous trailers and proceeded with the manufacture, design and engineering of same with such knowledge.  As such, these defendants are liable for the foreseeable injuries and damages complained of in this litigation under the causes of action set forth herein and as discovery may reveal in the development of this case.

3.6.    Further, Plaintiff has learned that TTMA has actively participated in the marketing of the defectively designed trailers involved in this case. Based on information and belief, Plaintiff has learned that TTMA has falsely and/or fraudulently marketed to the public that the "state of the art" of trailers of the type involved in this case did not include underride protection devices. Further, TTMA has marketed and/or published to residents in Texas and elsewhere that the "recommended practices" for the manufacture, design and engineering of such trailers did not include underride protection guards, when they knew and/or should have known that a reasonable alternative that prevented the severity of injuries involved in the case could have been prevented. Plaintiff intends to show that TTMA aided and abetted and conspired with defendants in the manufacture and marketing of the trailer involved in this litigation as well as the marketing and defense of fraudulent claims that such trailers were represented as "state of the art" and/or conformed with "recommended practices" for the design of such trailer. Defendants undertook this false campaign with knowledge that such representations and publications within all reasonable likelihood be made available, relied upon, read by, and/or accessed in Texas by Texas residents, consumers and/or manufacturers. Further, these defendants knew or should have known that their false and fraudulent publications would be used in the design, manufacturer and/or marketing of the dangerous trailers involved in interstate commerce that would foreseeably enter the State of Texas. Thus, all defendants are jointly severally liable for their cooperative conduct leading to the publication of misinformation, false marketing information, and/or unreasonable representations regarding the state of the art, design standards and/or manufacturing standards for the dangerous trailers involved in this litigation.

6

## IV.
## CAUSES OF ACTION

### *Product Liability*

4.1.    The above-stated facts are incorporated in this Causes of Action Section for all purposes. Plaintiff will show that the vehicle was designed, manufactured, sold, marketed and/or otherwise placed into the stream of commerce by defendants. Indeed, the vehicle was designed, manufactured and marketed without side under-ride restraints and was defective and poorly designed for the foreseeable conditions that Plaintiff was confronted with at the time of the collision. Indeed, defendants are strictly liable for the defective design, manufacture and marketing of the trailer.  Plaintiff additionally claims that the vehicle was uncrashworthy.   Plaintiff claims that defendants unreasonably, knowingly and/or purposefully caused such defective design to exist in the  trailer, and such conditions contributed to and/or were a producing/proximate cause of injuries and/or damages suffered by Plaintiff.  Indeed, it has been well known by all defendants and others in the industry that side underride protection was feasible in the design and manufacture of commercial trailers and would prevent thousands of deaths and severe injuries, even testifying before the United States Congress[1].  However, defendants and others in the trailer manufacturing industry wholly and with malice disregarded this safeguard.

4.2.    Plaintiff will further show that the complained-of defects and/or unreasonable designs were present in the vehicle at the time the trailer left the defendants' care, custody

---

[1]Side underride guards are present on trailers in Europe and have been present for several years. TTMA and its trailer manufacturer members commercial, including, Wabash National Corporation, Wabash National, L.P., Wabash National Trailer Centers, Inc., and Transcraft Corporation have fought such safety features in the United States.

and control and that such defective conditions rendered the vehicle unreasonably dangerous. Plaintiff asserts that he is in a group intended to be protected by the use of the side under-ride protection.

4.3.    Indeed, Plaintiff claims that defendants designed, marketed and/or manufactured the vehicle in such a manner as to increase the risk of injury to persons involved in a collision with the vehicle.

### Strict Liability

4.4.    Plaintiff claims that defendants are strictly liable for the design, manufacturing, marketing and failure to warn relating to the vehicle, its uses and the resulting injuries and damages complained of herein. Plaintiff asserts all claims and causes of action under strict liability under Texas products liability.

### Negligence/Gross Negligence

4.5.    Additionally and alternatively, Plaintiff alleges that defendants are negligent, jointly and severally, in causing and/or contributing to the complained-of damages and injuries in this suit, for which Plaintiff seeks recovery of damages herein. Plaintiff additionally claims that defendants' conduct and actions and/or omissions were grossly negligent and for which Plaintiff seeks punitive damages.

### Loss of Consortium/Support

4.6.    Plaintiff seeks damages for loss of consortium, affection, attention, support and care because of the events complained of herein. Plaintiff additionally seeks damages for past and future mental anguish, pain and suffering and past and future psychological damages incurred and to be incurred by Plaintiff.   Plaintiff additionally seeks past and

future lost wages and loss earning capacity.

### *Intentional/Malicious/Knowing Conduct*

4.7.    Plaintiff additionally claims that defendants knew that the vehicle was unreasonably dangerous as designed, manufactured and marketed.  However, despite such knowledge, continued to place these dangerous vehicles in the stream of commerce knowing that serious bodily injury would result.  Plaintiff seeks actual and punitive damages as allowed by law.

### *Vicarious Liability*

4.8.    Plaintiff further claims that these defendants are liable, jointly and severally, under theories of alter egos, joint venturers, single business enterprise, respondeat superior, and/or because one or more of these is a division or subdivision of the other. Additionally and alternatively, Plaintiff claims that a principal/agent relationship exists by and between the defendants in this matter.

### V.
### PRAYER AND JURY DEMAND

For the reasons stated above, Plaintiff demands a jury trial, that defendants be cited and required to appear herein, and after due course of discovery, process and trial, that Plaintiff recovers judgment against defendants,  in at least the following particulars:

1)    Actual damages within the jurisdictional limits of the Court;

2)    Punitive damages against Defendants in the amount of the collective judgment of the jury, but not less than three times actual damages awarded;

3)    Reasonable and necessary attorneys' fees;

4)    Pre- and post-judgment interest as allowed by law; and

5) Any and all other relief, special and general, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE HALL LAW FIRM

Benjamin L. Hall, III
Federal Bar No. 8787
State Bar No. 08743745
530 Lovett Boulevard
Houston, Texas 77006
(713) 942-9600
(713) 942-9566 (fax)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

OF COUNSEL:

Kimberly R. Bennett
Federal Bar No. 32123
State Bar No. 24011946
The Hall Law Firm
530 Lovett Boulevard
Houston, Texas 77006
(713) 942-9600
(713) 942-9566 (fax)

10